FILED
BILLINGS, MT
2007 MAR 16 AM 11 50
PATRICK E. DUFFY, CLERK
BY _____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

ERIK G. KNUDSON,

           Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

           Defendant.

CAUSE NO. CV-06-55-M-CSO

FINDINGS AND RECOMMENDATION
OF UNITED STATES
MAGISTRATE JUDGE

Plaintiff Erik G. Knudson (Knudson) instituted this action to obtain judicial review of the decision of Defendant Commissioner of Social Security (Commissioner), denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-433, and for supplemental security income benefits (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381-1383c.

The Commissioner has moved for summary judgment, and the issues are fully briefed. Having considered the issues presented by the parties, together with the administrative record, the Court recommends that the Commissioner's motion for summary judgment be denied, and this case be remanded for further administrative proceedings.

PAGE 1

## I.  PROCEDURAL BACKGROUND

Knudson brings this action challenging the Commissioner's decision denying his application for benefits.  He protectively filed his application for DIB benefits on April 17, 2003, and effectively filed his SSI application on June 30, 2003.  Tr. 47-50; 66; 201-08.  Knudson alleges he became disabled on December 18, 2002, due to back problems, obesity, depression, joint pain, headaches, and constipation.  Tr. 67, 78.

After a December 2, 2005, administrative hearing at which Knudson appeared with counsel, an Administrative Law Judge (ALJ) found that Knudson was not disabled within the meaning of the Act.  Tr. 249-96.  The Appeals Council later denied Knudson's request for review, rendering the ALJ's decision the agency's final decision for purposes of judicial review.  Tr. 6-9.  Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

This Court's review is limited.  The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Substantial evidence also has been described as "more than a mere scintilla" but "less than a preponderance." Sandegathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). The District Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. Green v. Heckler, 803 F.2d 528, 530 (9th Cir. 1986) (citing Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985)). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citation omitted).

### III. BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the

PAGE 3

national economy." Schneider v. Commr. of Soc. Sec. Admin., 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. Corrao v. Shalala, 20 F.3d 943, 946 (9th Cir. 1994) (citing 42 U.S.C. § 1382C(a)(3)).

1. The claimant must first show that he or she is not currently engaged in substantial gainful activity. Id.

2. If not so engaged, the claimant must next show that he or she has a severe impairment. Id.

3. The claimant is conclusively presumed disabled if his or her impairments are equivalent to one on the list of impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.

4. If the claimant does not have a listed impairment, then the claimant must establish a prima facie case of disability by showing an inability to engage in past work because of the medical impairments. Corrao, 20 F.3d at 946.

5. Upon such a showing, the burden then shifts to the Commissioner to prove that plaintiff can engage in other types of substantial gainful work existing in the national economy given the claimant's age, education, work experience and residual functional capacity. Jones, 760 F.2d at 995.

If the Commissioner finds that a claimant is disabled or not disabled at any point in this process, the review process is terminated. Corrao, 20 F.3d at 946.

## IV.   DISCUSSION

Following the steps in the sequential evaluation process,

PAGE 4

the ALJ first found that Knudson had not engaged in substantial gainful activity since the December 18, 2002, alleged disability onset date. Tr. 23. The ALJ next found that Knudson suffered from morbid obesity and chronic low back pain with no evidence of disc herniation, both of which constituted severe impairments. Tr. 23. However, the ALJ found that Knudson's condition did not meet or equal the severity of any impairment described in the Listing of Impairments. Tr. 23. The ALJ then found that Knudson's "testimony was generally credible excepting subjective allegations of disabling pain and limitations resulting from his impairments." Tr. 23. The ALJ next determined that Knudson retained the residual functional capacity to perform a limited range of sedentary work. Tr. 23.

Based on that RFC, the ALJ determined that Knudson was unable to perform his past relevant work as an auto mechanic. Tr. 23. Relying on vocational expert testimony, the ALJ concluded at step five that there were a significant number of jobs in the national economy that Knudson could perform, including work as a cashier, small product assembler, and production inspector checker. Tr. 24.

Knudson challenges the ALJ's decision on three grounds. First, he maintains the ALJ erred by finding that his morbid obesity was not of listing level severity. He next argues that the ALJ misconstrued or failed to properly credit medical records

PAGE 5

from treating physician Dr. Michael Kornish.  Finally, in an argument that relates to the ALJ's credibility determination, Knudson argues the ALJ failed to take into account the effects of his severe pain and narcotic medications.  The Commissioner argues otherwise, and maintains that substantial evidence supports the ALJ's decision that Knudson was not disabled within the meaning of the Act because he retained the residual functional capacity to perform a limited range of sedentary work.

Knudson argues that the ALJ erred at step three by finding that his morbid obesity was not of listing level severity.  The ALJ concluded that Knudson did not have an impairment or combination of impairments severe enough to meet or medically equal the criteria of any listed impairment, "with a special review placed on Listing 1.04 and 12.04."  Tr. 18.  Knudson argues the ALJ erred by failing to consider whether his obesity, in combination with his chronic back pain, met or equaled the criteria set forth in Listing 1.02A.

In 1999, the Social Security Administration eliminated listing 9.09, which set for the criteria for presumptive disability based on obesity, from the Listing of Impairments in 20 C.F.R., subpart P, appendix 1.  SSR 02-1P, *1 (Sept. 12, 2002).  Although obesity is no longer a separately listed impairment, an obese claimant may nevertheless prevail at step three if he can establish that his condition meets or equals the

PAGE 6

criteria of another listed impairment. SSR 02-1P, * 5. The Commissioner will "find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing." SSR 02-1P, *5. The Commissioner may likewise "find that obesity, by itself, is medically equivalent to a listed impairment." SSR 02-1P, *5.

By way of example, the Commissioner has explained that "if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and [the Commissioner] will then make a findings of medical equivalence." SSR 02-1P, *5.

Section 1.00B2b(1) defines the "inability to ambulate effectively" as follows:

> an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning...to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

While Section 1.00B2b(1) thus suggests that a claimant who does not use a hand-held assistive device is by definition capable of ambulating effectively, the next subsection explains that "[t]o ambulate effectively, individuals must be capable of sustaining a

PAGE 7

reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." Listing 1.00B2b(2). Specific examples of ineffective ambulation include, but are not limited to:

> the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.
>
> Section 1.00B2b(2).

Section 1.00B2b(2) thus contemplates that a claimant who does not use an assistive device such as a walker or crutches may nevertheless be unable to ambulate effectively if he cannot walk a block at a reasonable pace or cannot carry out routine ambulatory activities. Knudson argues that his obesity is so severe that he satisfies these criteria, pointing for support to records from his treating physician Dr. Kornish. For example, Dr. Kornish wrote in October 2003 that Knudson's "functional capacity [was] worsening and while could previously walk 1/4 mile without having to sit down, he could now walk only 1/8 of a mile. Tr. 193. Knudson underwent a treadmill test in April 2004, but was unable to continue for more than seven minutes due to low back pain even though the test was conducted at zero degree elevation and a very slow walking pace. Tr. 184. Despite

PAGE 8

evidence that Knudson's ability to ambulate was significantly compromised, the ALJ did not consider whether Knudson's obesity might be equivalent to Listing 1.02A.

The ALJ instead placed little weight on Dr. Kornish's various opinions, including a physical capacities evaluation in which he indicated Knudson could stand and/or walk for less than two hours in an eight-hour workday due to chronic lumbar pain secondary to morbid obesity.  Tr. 197-98.  The ALJ rejected Dr. Kornish's assessment, finding instead that Knudson could stand and/or walk for about two hours in an eight-hour workday.  Tr. 22.  In doing so, the ALJ chose some middle ground between Dr. Kornish's assessment and that of the agency reviewing physicians who indicated that Knudson could stand and/or walk about six hours in an eight-hour workday.  Tr. 21, 172-77.

The ALJ is entitled to rely on a report by a reviewing physician as long as that opinion is consistent with other evidence of record.  Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989).  Here, however, Dr. Wise's opinion was inconsistent with the medical evidence of record, most of which comes in the form of treatment notes from treating physician Dr. Kornish.  Tr. 153-71; 178-96.  Significantly, Dr. Wise reviewed Knudson's records and completed his assessment in July 2003, some sixteen months before treating physician Dr. Kornish completed his assessment.  Tr. 172-76; 197-200.  Dr. Wise did not have the

benefit of Dr. Kornish's more recent medical records, which chronicled Knudson's growing difficulties. The record reflects that Knudson gained more than one hundred pounds in the year before the hearing, which is consistent with Dr. Kornish's observations that Knudson's morbid obesity was causing him greater difficulties. Tr. 275.

The record also indicates that Knudson was so obese that he could not fit into an MRI machine designed to hold up to 350 pounds, and Dr. Kornish was unable to weigh him on the office scales. Tr. 160, 179, 188, 192. Knudson is five feet, ten inches tall, and reported weighing 481 pounds at the time of the December 2004 hearing.[1] Tr. 18. Based on those numbers, Knudson's body mass index (BMI) is 69.[2] The Commissioner categorizes a BMI of greater than or equal to 40 as "extreme" obesity, presenting "the greatest risk for developing obesity-related impairments." SSR 02-1P, *2.

Because the record contains evidence that Knudson's morbid obesity adversely affected his ability to ambulate, it is possible that his condition was medically equivalent to Listing

---

[1] The record indicates that Knudson weighed approximately 470 pounds in April 2005. Tr. 239.

[2] Although there is no mention of Knudson's BMI in the record, it is readily calculated by dividing his weight in pounds by the square of his height in inches, and multiplying the result by 703. Department of Health and Human Services, Centers for Disease Control and Prevention, Body Mass Index Calculator, available at http://www.cdc.gov/nccdphp/dnpa/bmi/adult.

PAGE 10

1.02A.  The Commissioner argues that Listing 1.02A is simply inapplicable in this case, but according to SSR 02-1P obesity alone may be medically equivalent to Listing 1.02A if the claimant can establish that he is unable to effectively ambulate within the meaning of the regulations.  SSR 02-1P, *5.  Whether Knudson can satisfy that burden here is for the Commissioner, not this Court, to decide.  *See Frost v. Barnhart*, 314 F.3d 359, 364 (9th Cir. 2002).

### *V. CONCLUSION*

Based on the foregoing,

**IT IS RECOMMENDED** that the Commissioner's Motion for Summary Judgment be **DENIED** and this case be remanded to the Commissioner to evaluate whether Knudson's morbid obesity is medically equivalent to Listing 1.02A.  Judgement should be entered pursuant to sentence four of 42 U.S.C. §405(g) **REVERSING** the Commissioner's decision and **REMANDING** this case for further administrative proceedings consistent with this decision.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DONE and DATED this 16th day of March, 2007.

_____
Carolyn S. Ostby
United States Magistrate Judge